IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

CANDICE NELSON,                    )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )        CASE NO. 3:12-cv-369-MEF
                                   )        (WO – Do Not Publish)
PMTD RESTAURANTS, LLC d/b/a        )
KENTUCKY FRIED CHICKEN,            )
                                   )
        Defendant.                 )

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Candice Nelson ("Nelson" or "Plaintiff"), who suffers from cerebral palsy, is suing her former employer, Defendant PMTD[1] Restaurants, LLC ("PMTD" or "Defendant"), a Kentucky Fried Chicken franchisee, seeking relief under the Americans with Disabilities Act, as amended (the "ADA"), for alleged disability discrimination. Before the Court are PMTD's Motion for Summary Judgment (Doc. #29) and Reply Brief in Support of Motion for Summary Judgment which the Court construes to contain a Motion to Strike (Doc. #40) and Plaintiff's Objection to Defendant's Supplemental Evidentiary Submission (Doc. #43). After careful consideration of the arguments and evidentiary submissions of the parties and the relevant law, the Court finds that Plaintiff's Objection is due to be OVERRULED, PMTD's Motion to Strike is due to be DENIED, and PMTD's Motion for

---

[1]   PMTD stands for "People Make the Difference."

Summary Judgment is due to be GRANTED IN PART and DENIED IN PART.

## II. JURISDICTION AND VENUE

This Court has subject-matter jurisdiction over Nelson's claims under 28 U.S.C. § 1331 (federal question). The parties do not claim that the Court lacks personal jurisdiction over them, nor do they dispute that venue is proper under 28 U.S.C. § 1391(b), and the Court finds adequate allegations supporting both.

## III. LEGAL STANDARD

A motion for summary judgment looks to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court should grant summary judgment when the pleadings and supporting materials show that no disputed issue exists as to any material fact and that the moving party deserves judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the relevant documents that "it believes demonstrate the absence of a [disputed] issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To shoulder this burden, the moving party can present evidence to this effect. *Id.* at 322–23. Or it can show that the non-moving party has failed to present evidence in support of some element of its case on which it ultimately bears the burden of proof. *Id.*

If the moving party meets its burden, the non-movant must then designate, by

affidavits, depositions, admissions, and answers to interrogatories, specific facts showing the existence of a genuine issue for trial. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995). A genuine issue of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in his or her favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). Thus, summary judgment requires the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Indeed, a plaintiff must present evidence demonstrating that he or she can establish the basic elements of a claim, *Celotex,* 477 U.S. at 322, because "conclusory allegations without specific supporting facts have no probative value" at the summary judgment stage. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

A court ruling on a motion for summary judgment must believe the non-movant's evidence. *Anderson*, 477 U.S. at 255. It also must draw all justifiable inferences from the evidence in the non-moving party's favor. *Id.* After the non-moving party has responded to the motion, the court must grant summary judgment if there exists no disputed issue of material fact and the moving party deserves judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## IV.  THE RELEVANT FACTS

### A.    Nelson's Disability

Nelson was born with cerebral palsy ("CP"), which has weakened her left hand and

caused it to curl slightly inward; Nelson's CP has also caused her to suffer from seizures.

In August 2009, Nelson had brain surgery to reduce her CP-related seizures.  That surgery

left her with some short-term memory loss and sensitive hearing.

## B.     Positions at Valley KFC

In March 2011, Nelson applied for a job online with the KFC in Valley, Alabama,

which PMTD operates.  Labor at Valley KFC is divided into four "crew member" positions:

cashier, front packer, back packer, and cook.  On every shift, there are two cashiers, two

packers, and a cook scheduled to work.  One of the cashiers covers the front cash register and

takes the orders of the dine-in customers, and the other cashier covers the drive-through

wearing a headset to hear the customers' orders.  The front packer loads the dine-in

customers' food into boxes, and the back packer boxes up the food for the drive-through

customers' orders.  The back packer has to wear a headset to hear the customers' orders and

must have the order packed ahead of time.  Another job duty of packers is "prep," which

involves making the mashed potatoes and then batching the side items—mashed potatoes,

green beans, cole slaw, etc.—into cups, placing plastic lids on the cups, and putting the

cupped side items into a warming box.  The prep work is typically done before the lunch and

dinner rushes.

## C.     Nelson is Hired to Work as a Cashier at Valley KFC

In April 2011, John Teal ("Teal"), the general manager of Valley KFC, called Nelson

into the store to interview for a vacant part-time cashier position.  Teal hired Nelson on April

4

22, 2011, to work a 90-day probationary period in this position.  Nelson was to work a maximum of twenty hours a week, but she was not guaranteed a minimum number of work hours per week.  During the interview, Teal did not give Nelson a written job description of the cashier position (because no such job description existed) or any other information about the job, aside from describing it as "working as a team."  Teal did not notice Nelson's weakened left hand during her interview.  Nelson started training for the cashier position at Valley KFC on April 26, 2011.

**D.     Nelson's First Week of Work**

On her first day of work at Valley KFC, Teal scheduled Nelson for a two-hour training session with him packing boxes for the drive-through orders, or "back packing."[2] During that training session, Teal observed Nelson having trouble closing the boxes of food because of her weakened left hand.  Teal observed Nelson eventually get frustrated that day and walk away from the boxes.

On April 29, 2011, during her second shift at Valley KFC, Nelson began training during lunchtime on the front cash register with front cashier and management team member, Bubba Daniel ("Daniel").  In his deposition, Teal did not recall observing Nelson's work on the cash register that day, and he also did not recall anyone communicating to him about how Nelson performed her cashier job that day.  It is unclear from the record how many shifts

---

[2]     Teal trained all cashiers on packing first, so they could learn what food goes into the orders.

Nelson spent at the cash register, but it is undisputed that she did not receive any reprimands or discipline while she worked as a cashier.

At some point during Nelson's first week of training, she and Teal had a discussion in which Teal told Nelson that he "didn't think she was going to be able to make it" in a job at Valley KFC.  (Teal Dep. 65:14–17, Doc. #31-1.)  Teal also asked Nelson what was wrong with her hand, at which time Nelson informed Teal of the brain surgery she underwent for her seizures.  She explained that her hearing sensitivity also made it difficult for her to wear the headset, which was necessary for drive-through cashiers and back packers.  (Teal Dep. 65–68, Doc. #31-1.)  By her second week of work, which began on May 4, 2011, Teal had moved Nelson to the back packer position.

**E.    Nelson's Work as a Packer**

Nelson worked as a packer doing packing and prep work the rest of her time at Valley KFC.  Although Nelson continued to be slower than her co-workers at closing boxes and placing lids on the side items, and she sometimes needed help from her co-workers to place lids on the side items, Nelson's pace in performing manual tasks improved over the next three weeks.  Nelson never received any written reprimands, discipline, or corrections from Teal or other members of the management while she worked as a packer (or cashier), but it is undisputed that a few of her coworkers made verbal complaints to Teal about Nelson's slow speed in packing orders.

**F.    Nelson's Termination**

On May 22, 2011, within a month of Nelson joining the team at Valley KFC, Teal terminated Nelson.  That same day, Teal sent a termination report to Charter HR, the professional employer organization that handles PMTD's payroll.  After Teal sent the termination report, James Gillespie ("Gillespie"), Teal's supervisor and a Director of Operations at PMTD, asked Teal to send him documentation about the specific issues that led to Nelson's termination.  Teal responded to Gillespie with the following email:

> Here is the down and dirty on Candice
> 1-She is hearing impaired which made it impossible for her to effectively wear the headset and work drive through or even pack as the headset gave her a headache and then she could not hear anything else.
> 2-She has no short term memory (caused from a surgery that she had), this makes hard [sic] for her to remember prices and even where keys are on register making it difficult to use her as a cashier.  This also made it so that management has to write her tasks for the day and does not have the ability to remember tasks given to her verbally.
> 3-She has only about 50% to 60% use of her left hand that caused her to not be able to cup side items in a quick, fast and efficient manner.  It also limited her to only being able to lift about 10 pounds without assistance.  I was not informed of any of the limitations during the interview and hiring process.

(Pl.'s Ex. 1, Doc. #35-1.)

More than three months after her termination, Nelson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was treated differently from other employees at Valley KFC because of her disability.  Specifically, Nelson alleged that her hours were reduced, that she received hostile treatment from Teal in front of other employees, and that Teal would not allow her to work the cash register because of her disability. (EEOC Charge, Doc. #1-1.)

## V. DISCUSSION

**A.     Motion to Strike**

In its summary judgment reply brief, PMTD moves the Court to strike a declaration given by Nelson a little more than two months after her termination, which she relies on heavily in her response brief.  (Def.'s Ex. D, Doc. #31-2, at 59.)  A district court may disregard a party's affidavit as a "sham affidavit" in ruling on a summary judgment motion only when the party "has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact" and the party "thereafter [attempts to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."  *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984).  In applying this rule, courts must distinguish between "discrepancies which create transparent shams and discrepancies which create issues of credibility or go to the weight of the evidence."  *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986).   If the challenged affidavit or declaration merely creates witness credibility or weight-of-the-evidence issues, a court must reserve these questions for the trier of fact.  *Id.* at 954.

Although PMTD was the one to submit Nelson's declaration[3] as an attachment to Nelson's deposition testimony, which was submitted in support of PMTD's motion for summary judgment, PMTD now argues that the declaration should be stricken from the record because it directly contradicts Nelson's deposition testimony, and therefore, is a

---

[3]   PMTD submitted Nelson's declaration as an attachment to her deposition testimony, which was submitted with its evidentiary submission in support of summary judgment.

prohibited "sham" declaration.  Nelson responds that her declaration, which was created two months after her termination and more than a year before her deposition, and which was made an exhibit to Nelson's deposition and provided to PMTD before her deposition, is not the kind of "sham" evidence contemplated by the Court in *Van T. Junkins* and its progeny.

The Court agrees with Nelson.  The purpose of the "sham affidavit" rule is to prevent a party who has been examined at length in deposition from diminishing "the utility of summary judgment as a procedure for screening sham issues of fact" by merely submitting an affidavit that contradicts her prior testimony.  *See Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980) (quoting *Perma Res. & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)) (internal quotation marks omitted);[4] *Tippens*, 805 F.2d at 953 (quoting the same language from *Perma Research*).  The challenged declaration in this case was created soon after Nelson was terminated from her job at Valley KFC and more than a year before PMTD took her deposition.  Nelson provided PMTD with the declaration prior to her deposition, and indeed, Nelson made it an exhibit to her deposition.  PMTD, however, chose not to test the veracity of Nelson's declaration during her deposition.  Moreover, even if portions of Nelson's declaration conflict with portions of her deposition testimony, the Court finds that any such conflicts raise issues regarding Nelson's credibility as a witness and the weight given to her declaration, which are issues the Court must reserve for the jury.  *See*

---

[4]    In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. Nov. 3, 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

*Tippens*, 805 F.2d at 954.  Therefore, PMTD's Motion to Strike (Doc. #40) is due to be DENIED.

**B.      Motion for Summary Judgment**

The ADA prohibits an employer from discriminating against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."    42 U.S.C. § 12112(a).    An employer unlawfully discriminates against a qualified individual with a disability by taking an adverse employment action against her because of the disability, or by failing to provide "reasonable accommodations" for the disability, unless doing so would impose an undue hardship on the employer.  42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9(a); *Morisky v. Broward Cnty.*, 80 F.3d 445, 447 (11th Cir. 1996).

An ADA plaintiff may prove disability discrimination through either direct or circumstantial evidence.  *See Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1451 (11th Cir. 1998).  Direct evidence is "evidence which, if believed, proves the existence of fact in issue without inference or presumption." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir. 1987) (citing *Black's Law Dictionary* 413 (5th ed. 1979)).  If a plaintiff produces direct evidence of discrimination, and the plaintiff can show that discrimination was a substantial motive for an employer's adverse action, then the burden of persuasion shifts to the employer.  *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1394 n.8 (11th Cir.

1997).  A finding that direct evidence of discrimination exists is, standing alone, normally sufficient to defeat a motion for summary judgment.  *See Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998) (per curiam).

However, if the plaintiff presents circumstantial evidence of discriminatory treatment, different burdens of production and proof apply.  In circumstantial evidence cases, a plaintiff must first make out a prima facie case, then the burden shifts to the defendant to produce legitimate, non-discriminatory reasons for the adverse employment action, and then the burden shifts back to the plaintiff to establish that these reasons are pretextual.  *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1375 (11th Cir. 1996) (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802–04 (1973)); *see also Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000) (per curiam) ("The burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims.").  Under this framework, Nelson must show that she (1) has a disability; (2) is a qualified individual under the ADA; and (3) was subjected to unlawful discrimination because of her disability.  *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000).  If Nelson meets this burden, PMTD must then provide a legitimate, non-discriminatory reason for the adverse employment action, *Cooper v. Southern Company*, 390 F.3d 695, 732 (11th Cir. 2004), and if PMTD does so, the burden shifts back to Nelson to produce substantial evidence that PMTD's proffered reason is pretextual.  *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008); *Chapman v. AI Transport*, 229 F.3d 1012, 1024–25 (11th Cir. 2000).

11

As an initial matter, the Court finds that Nelson has not presented direct evidence of discrimination, and thus the burden-shifting *McDonnell-Douglas* framework is applicable here. "[D]irect evidence relates to actions or statements of an employer reflecting a discriminatory . . . attitude correlating to the discrimination . . . complained of by the employee." *Caban-Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990); *see also Earley v. Champion Int'l Co.*, 907 F.2d 1077, 1081 (11th Cir. 1990) ("One example of direct evidence would be a management memorandum saying, 'Fire Earley—he is too old.'"). Evidence that merely *suggests*, but does not *prove*, an employer's discriminatory motive for an adverse employment action is not direct evidence, but circumstantial evidence. *See Burrell*, 125 F.3d at 1393.

Nelson alleges in her complaint that Teal took the following adverse employment actions against her because of her disability: (1) he removed her from the cashier position upon learning of her disability; (2) he reduced her work hours from 20 hours per week to 8 to 10 hours per week; and (3) he terminated her. In her response brief, Nelson argues that Teal's email to Gillespie on May 23, 2011, explaining his reasons for terminating Nelson constitutes direct evidence of disability discrimination. Specifically, Nelson argues that Teal's statements to Gillespie that Nelson was hearing-impaired, suffered memory loss, and "only had about 50% to 60% use of her left hand," that he felt these conditions limited her, and that she failed to inform him of these limitations in the hiring process, are direct evidence of discrimination. These statements, while they undeniably discuss Nelson's disability and

its effects, do not not prove that her disability was a substantial motive for her termination.

If anything, Teal's email raises a suggestion of discrimination, which does not qualify as direct evidence.  Moreover, Teal's email relates to only one of Nelson's claimed adverse employment actions–her termination–and thus, it cannot serve as direct evidence for the others.

Based on the foregoing, the Court analyzes this case according to the *McDonnell-Douglas* burden-shifting framework, which places the initial burden on Nelson to prove each each element of her prima facie case.  The first element—that Nelson has a disability—is uncontested by the parties.  PMTD instead contends that it is entitled to summary judgment because Nelson cannot prove the second two elements of her prima facie case—that she is a qualified individual under the ADA and that PMTD discriminated against her because of her CP.  The Court will address each of these arguments in turn.

### 1.    *Qualified Individual*

A "qualified individual with a disability" under the ADA is someone who can perform the "essential functions" of the job, "with or without reasonable accommodation." 42 U.S.C. § 12111(8).  "Essential functions are 'the fundamental job duties of the employment position the [disabled employee] holds or desires.'"  *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1258 (11th Cir. 2001) (quoting 29 C.F.R. § 1630.2(n)(1)).  When determining what those fundamental job duties are, courts must consider the employer's judgment and any written job descriptions the employer produces.  *Id.*  In considering the employer's judgment, which

is entitled to substantial weight, courts may look to testimony from the plaintiff's supervisor. *Holly v. Clairson Indus.*, 492 F.3d 1247, 1257–58 (11th Cir. 2007).  Other relevant factors to consider are the amount of time the employee spends performing the function and the consequences of not requiring the employee to perform the function.   29 C.F.R. § 1630.2(n)(3).  This determination is a fact-based inquiry to be resolved on a case-by-case basis.  *Lucas*, 257 F.3d at 1258.   Job duties that are merely marginal are not essential functions of the job.  29 C.F.R. § 1630.2(n)(1).

An accommodation is a "reasonable" one only if it enables the employee to perform the essential functions of the job.  *Holly*, 492 F.3d at 1256 (citations omitted).  Such accommodations include "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed . . . ." 29 C.F.R. § 1630.2(o)(1)(ii).  But the ADA does not require an employer to eliminate an essential function of the job to accommodate a disabled employee.  *See D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1229 (11th Cir. 2005).

To determine whether Nelson is a qualified individual under the ADA, the Court must first identify the essential functions of the jobs for which Nelson was hired—a cashier—and then decide whether she could have performed this position with or without a reasonable accommodation.  *See Lucas*, 257 F.3d at 1258.  If Nelson could not have performed the essential functions of this job, even with a reasonable accommodation, she is not a qualified individual under the ADA.  *See Holly*, 492 F.3d at 1256.

14

The record establishes that the job duties of the cashier position were to greet the customers, take their orders, and process payments. (Teal Dep. 43:6–9, Doc. #31-1.) To take customer orders, cashiers must operate the KFC cash register, which has several keys with varying functions. The keys have both pictures of the menu items and written descriptions of the items on them. The Court finds that these duties—including being able to operate the cash register and recall customer orders—were the essential functions of the cashier position for which Nelson was hired. While the evidence indicates that cashiers sometimes packed orders as well, because performance of this duty was only occasional, the Court finds that this was only a marginal function of the cashier job.

With that conclusion in mind, a review of the record shows that a disputed issue of fact exists as to whether Nelson was qualified to perform the essential functions of the cashier position for which she was hired. Teal testified that the only function of the cashier position that Nelson could not perform was remembering the functions of the cash register keys. However, the undisputed evidence shows that new cashiers were given three to five shifts of training on the cash register. Nelson testified that she was put in front of the cash register for the first time at the lunch rush hour and was given no more than ten minutes of total training on the machine before Teal removed her from the cash register and set her to work as a packer. While Teal contends that Nelson asked to be removed from the cashier position, Nelson repeatedly contests this fact throughout her deposition. Moreover, Teal could not recall during his deposition ever observing Nelson work as a cashier or hearing

reports of her working as a cashier from other KFC employees.  Taking this evidence in the light most favorable to Nelson, the Court finds that a disputed issue of fact exists as to whether Nelson was qualified to perform the essential functions of the cashier position for which she was hired, with or without a reasonable accommodation.

## 2.   *Discrimination Because of a Disability*

Discrimination under the ADA includes not only adverse employment actions but also an employer's refusal to make "reasonable accommodations" to a plaintiff's known disabilities.  42 U.S.C. § 12112(a) & (b)(5)(A); *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998).  PMTD construes Nelson's one-count complaint to include both a disparate-treatment discrimination and a failure-to-accommodate claim.  The Court agrees with that construction and will analyze these claims separately.

### a.   **Nelson's Failure-to-Accommodate Claim**

PMTD argues that Nelson's failure-to-accommodate claim should be dismissed because Nelson did not allege this type of discriminatory treatment in her EEOC charge, and thus, she failed to exhaust her administrative remedies on this claim before filing suit.  The Court agrees, and Nelson does not appear to contest (indeed, she does not even respond) to this argument in her response brief.

A plaintiff suing under the ADA must exhaust her administrative remedies prior to filing suit in federal court by filing a charge of discrimination with the EEOC and receiving the statutory notice from the EEOC.  *See* 42 U.S.C. § 12117 (making the procedures and

16

remedies applicable to Title VII plaintiffs applicable to ADA plaintiffs suing in the employment context); *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989) (setting forth exhaustion requirements for plaintiffs filing suit under Title VII). The allegations in the judicial complaint must be "reasonably related" to the EEOC charge with no "material differences" between the two. *Wu*, 863 F.2d at 1547 (citing *Ray v. Freeman*, 626 F.2d 439, 443 (5th Cir. 1980)). While a court may entertain claims in a later complaint "which serve to amplify, clarify, or more clearly focus earlier EEO complaints," "[a]llegations of new acts of discrimination, offered as the essential basis for the requested judicial review, are not appropriate." *Ray*, 626 F.2d at 443. Indeed, an employer's failure to accommodate is a separate act of discrimination under the ADA that gives rise to a separate cause of action under the ADA, with a different burden of proof and different theory of liability. *See* 42 U.S.C. § 12112(b)(5)(A); *Terrell v. USAir*, 132 F.3d 621, 624 (11th Cir. 1998) (setting forth the distinct burden of proof that applies to ADA failure-to-accommodate claims). Nelson does not mention anywhere in her EEOC charge that PMTD failed to provide her a reasonable accommodation so she could perform the essential functions of her job. Her charge is limited to allegations about Teal's hostile treatment of her and Teal's refusal to let her work at the cash register because he thought she was physically unable to do so. Because Nelson did not allege that PMTD failed to accommodate her disability in her EEOC charge, and thus, failed to exhaust her administrative remedies as to that claim, PMTD's motion for summary judgment on that claim is GRANTED.

17

### b.      Nelson's Disparate Treatment Claim

Nelson alleges in her complaint that Teal took the following adverse employment actions against her: (1) he removed her from the cashier position upon learning of her disability; (2) he reduced her work hours from 20 hours per week to 8 to 10 hours per week; and (3) he terminated her.  PMTD argues that Nelson has not presented circumstantial evidence showing that she was discriminated against because of her disability, and that even if she had, she cannot rebut PMTD's legitimate, non-discriminatory reasons for Teal's actions as being pretext for discrimination.

The Court finds that Plaintiff has presented sufficient circumstantial evidence to raise an inference that Teal discriminated against her on the basis of her disability.  First, Nelson has presented evidence that she was removed from the cashier position she was hired to fill before being given the same amount of training provided to other non-disabled employees. Teal testified in her deposition that new cashiers receive three to five shifts of training on the cash register.  Indeed, Teal himself received this amount of training as a cashier.  According to Nelson, she spent no more than ten minutes training on the cash register during the peak lunch rush before Teal moved her to a packer position—a position he had observed her have trouble with on her previous shift.  This evidence, combined with Teal's observation of the weakness of Nelson's left hand in her first training session, raises a reasonable inference that Teal removed Nelson from her cashier job without adequate training time because of her disability.

The only legitimate, non-discriminatory reason that PMTD has offered for this action is that Nelson requested to be removed from the cashier position because it was too difficult for her given her CP-related short-term memory loss.  Yet, Nelson disputes that she requested to be removed from the cashier position, or that she ever told Teal that she could not remember customer orders.  Moreover, Teal could not recall observing Nelson perform the cashier job at all or receiving any complaints or other feedback from other employees regarding Nelson's ability to perform the job.

Regarding Nelson's termination from her employment, the Court finds that Nelson has also presented sufficient circumstantial evidence in the form of statements made by Teal to make out her prima facie case of discrimination.  Nelson testified in her deposition that, in her discussion with Teal during her first week of work, Teal told her that he felt "duped" and that he did not think the job would work out for her because of her hand.  These remarks, at a minimum, suggest that a discriminatory intent motivated Teal's termination of Nelson.  Additionally, Teal's email to Gillespie, in which he stated that he was not informed of Nelson's limitations during the hiring process, gives rise to an inference that Teal could have possessed a discriminatory bias against her based on her disability.

PMTD's proffered legitimate, non-discriminatory reason for Nelson's termination is that she could not perform the essential functions of any crew member position at Valley KFC.  However, the Court has already concluded that Nelson has raised a disputed issue of fact that she could have performed the cashier position for which she was hired if she had

been given the same amount of training as any other incoming cashier.   Moreover, the lack of documentation of Nelson's deficient job performance in her month at Valley KFC, and the undisputed fact that Nelson did not receive any complaints about her work performance prior to her termination, could lead a reasonable juror to conclude that PMTD's stated non-discriminatory reason for terminating Nelson—that she could not perform any of the jobs in which she was placed—was mere pretext for a discriminatory motive.   *See Stanfield v. Answering Serv., Inc.*, 867 F.2d 1290, 1294 (11th Cir. 1989) (holding that lack of disciplinary reports in employee's work file and lack of verbal complaints to employee about her work habits supported a reasonable jury's conclusion that employer's articulated nondiscriminatory reason for terminating employee was pretextual).

With regard to Teal's reduction of Nelson's work hours, the Court concludes that Nelson has failed to rebut PMTD's legitimate, non-discriminatory reasons for the drop in her scheduled hours from 21 hours in her first week to 12 hours in her second week.   In his deposition, Teal testified that he normally scheduled work hours according to sales projections for that week.   In a later affidavit, Teal explained that Nelson was scheduled for 21 hours her first week of employment because she was receiving training that week.[5] Because Nelson has not rebutted PMTD's articulated non-discriminatory reason for Teal's reduction of her work hours, the Court finds that any disparate treatment claim based on this

---

[5]   Plaintiff filed an objection to Teal's affidavit (Doc. #43), arguing that it is a "sham affidavit" of the kind prohibited by *Van T. Junkins*.   However, the Court fails to see how this evidence directly conflicts with Teal's deposition testimony that he normally schedules hours and shifts depending on sales projections. Thus, the Court will consider Teal's affidavit in its analysis of this claim.

adverse employment action is unsupported by the record.

In sum, viewing the evidence in the light most favorable to Nelson, the Court finds that there are disputed issues of fact as to Nelson's disparate-treatment discrimination claim to the extent those claims are based on her removal from the cashier position and her eventual termination.  Thus, summary judgment is not warranted on that claim.

## VI. CONCLUSION

In accordance with the foregoing, it is hereby ORDERED as follows:

1.  Defendant's Motion to Strike (Doc. #40) is DENIED;

2.  Plaintiff's Objection to Defendant's Supplemental Evidentiary Submission (Doc. #43) is OVERRULED; and

3.  Defendant's Motion for Summary Judgment (Doc. #29) is GRANTED IN PART AND DENIED IN PART.  It is GRANTED to the extent is requests dismissal of Plaintiff's failure-to-accommodate claim under the ADA, as set forth in Count One of the complaint, and that claim is DISMISSED WITH PREJUDICE.  However, the motion is DENIED to the extent it requests dismissal of Plaintiff's disparate treatment claim under the ADA, as set forth in Count One of the complaint, based on her removal from the cashier position and Plaintiff's termination.

DONE this the 8th day of August, 2013.

/s/ Mark E. Fuller
_____
UNITED STATES DISTRICT JUDGE